**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0847-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

THEODORE L. LUCKEY,

    Defendant-Appellant.

_____

Submitted February 28, 2017 — Decided August 7, 2017

Before Judges Espinosa and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Ocean County, Indictment No.
09-08-1386.

Joseph E. Krakora, Public Defender, attorney
for appellant (William Welaj, Designated
Counsel, on the brief).

Joseph D. Coronato, Ocean County Prosecutor,
attorney for respondent (Samuel Marzarella,
Supervising Assistant Prosecutor, of counsel;
William Kyle Meighan, Assistant Prosecutor, on
the brief).

PER CURIAM

Defendant Theodore L. Luckey appeals the order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

After being unexpectedly jilted by his lover, defendant contacted a former boyfriend. They decided to go to Atlantic City, stopping at a motel along the way. Defendant convinced his former boyfriend to be bound and tied to the bed. It was then defendant told him that he planned to kill himself. Defendant left the former boyfriend tied to the bed and departed the motel.

Defendant drove around "aimlessly" looking for an abandoned house that he could use to "sit in the garage and die," but his car overheated. He picked a house at "random" and when an elderly woman answered the front door, he pushed past her and entered the home, where she and her elderly husband were making dinner. Defendant admitted that he "frightened them." The husband asked whether defendant wanted "credit cards, silver or money," but defendant told them that he "just wanted to kill [himself]" and then "broke down and told them everything" about the lover who left him and why he wanted to commit suicide. The couple offered defendant dinner but he declined. He allowed them to make their dinner. He later took a frozen dinner and paid the couple for it. It was the husband's birthday and he told defendant that one of their children might call or come over. Defendant told the couple

it would "not be good" if one of the children were to come over to the house and he then pulled out the phone wires to prevent the couple from communicating with anyone.

After a number of hours, defendant took the couple upstairs. He removed the doorknobs from the doors so they could not get out. At the top of the steps, he placed a mattress and a dresser "where they couldn't get down." Defendant went to the garage, started both his car and theirs. He returned to the house, wrote a suicide note and opened the back door because of possible fumes. After getting "juice and milk and stuff" for the elderly couple, defendant returned to the garage, got in one of the cars and waited to die.

The couple was still upstairs. Eventually, the eighty-seven-year-old husband, who walked with a cane, was able to get around the mattress and dresser and out of the house to summon help from a neighbor. Defendant awoke in an ambulance.

At his guilty plea, defendant confirmed these facts in detail. Relevant to the issue here, defendant stated:

> Court:       And then you say you took a
>              mattress and blockaded them in
>              with a dresser?
>
> Defendant:   Yes, Your Honor.
>
> Court:       And that was to keep them
>              upstairs?

3

```
Defendant:        Yes, Your Honor.

Court:            And to keep them from leaving?

Defendant:        Yes, Your Honor.
```

Defendant also testified about the purpose of his conduct toward the couple.

```
Court:            All right.  And you recognize
                  that by confining the [couple]
                  upstairs and tearing out the
                  phone lines, unscrewing the
                  doorknobs and the comment that
                  you made with regard to if the
                  family member were to come over
                  that it wouldn't be good, that
                  these things had the effect of
                  terrorizing them.     Do you
                  understand?

Defendant:        Yes, Your Honor.

Court:            And to the extent that you did
                  those things, it was your
                  purpose to terrorize them so
                  they wouldn't try to leave.  Is
                  that fair to say?

                  The purpose of your conduct, by
                  telling them that it wouldn't
                  be good if a family member came
                  over and by tearing the phone
                  lines out --

Defendant:        Yes, Your Honor.

Court:            -- it was your purpose to put
                  them in a situation where they
                  were afraid to do anything but
                  stay there?

Defendant:        Yes, Your Honor.
```

Defendant pled guilty to third-degree criminal restraint regarding the former boyfriend, N.J.S.A. 2C:13-2(a) (Count One); two counts of first-degree kidnapping regarding the elderly couple, N.J.S.A. 2C:13-1(b) (counts Four and Five); and fourth-degree contempt, N.J.S.A. 2C:29-9(a) (Count Three). He was sentenced to fifteen years in custody with an eighty-five percent period of parole ineligibility for the first-degree kidnapping charges, four years on count one and twelve months on count three, all of which were to be served concurrently, for an aggregate sentence of fifteen years.

Defendant appealed his sentence as excessive and also contended that the factual basis taken during his plea was not adequate to support a conviction for first-degree kidnapping. We affirmed his sentence, but remanded to correct an error in the judgment of conviction unrelated to this appeal. State v. Luckey, No. A-5465-11 (App. Div. Oct. 16, 2012). Defendant's petition for certification was denied. State v. Luckey, 213 N.J. 536 (2013).

Defendant filed a pro se petition for post-conviction relief (PCR), contending the facts did not warrant a conviction for first-degree kidnapping, that he was "forced" to take a fifteen-year sentence he "did not agree with" and claiming "malicious prosecution." The PCR petition was denied without prejudice.

Defendant filed another pro se PCR petition, alleging

ineffective assistance of counsel for "failing to adequately investigate and prepare a diminished capacity defense" and for not advising defendant "the State could not have convicted [him] of first-degree kidnapping." His PCR counsel alleged that by negotiating and permitting defendant to plead guilty to first-degree kidnapping, his counsel erred because the facts did not support that offense.

The PCR court denied defendant's petition by order dated August 3, 2015, finding in a written opinion that plea counsel was not ineffective "[b]ecause a motion to dismiss the indictment with respect to the kidnapping charges would have been meritless." Additionally, "[i]n light of the overwhelming evidence against [defendant], and given his significant sentencing exposure, it would not have been reasonable for him to decide to go to trial rather than accept the plea."

Defendant presents the following issues for our consideration in his appeal.

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF SINCE AN INSUFFICIENT FACTUAL BASIS WAS ELICITED FROM THE DEFENDANT AT THE TIME HE ENTERED HIS GUILTY PLEA TO TWO COUNTS OF FIRST DEGREE KIDNAPPING.

6

A. FACTUAL BACKGROUND

B. THE DEFENDANT DID NOT PROVIDE A SUFFICIENT FACTUAL BASIS TO ESTABLISH THE REQUISITE ELEMENTS OF FIRST DEGREE KIDNAPPING EMBODIED IN COUNTS IV AND V OF THE INDICTMENT, AS A RESULT OF WHICH THE TRIAL COURT ERRED IN DENYING HIS PETITION FOR POST CONVICTION RELIEF ON THAT BASIS.

We are not persuaded by these arguments and affirm. In order to prevail on an ineffective assistance of counsel claim, defendant must establish that: (1) counsel's performance was deficient; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984); see State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland test). In the context of a plea bargain, the defendant must show "a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. Nunez-Valdez, 200 N.J. 129, 142 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)).

Defendant's appeal only addresses the first-degree kidnapping charge. A person is guilty of kidnapping if, among other things, he or she "unlawfully confines another for a substantial period,

7

with . . . [the] purpose[] . . . [t]o inflict bodily injury on or to terrorize the victim or another." N.J.S.A. 2C:13-1(b)(2).

Defendant contends that the factual basis taken when he pled guilty did not support the purpose to "terrorize" element of the offense. However, defendant testified that he knew his acts had the effect of terrorizing the elderly couple and that his purpose was to do so in order that they would not leave to summon help. That his purpose to terrorize the couple was an intermediate goal of his overall object to commit suicide does not negate the applicability of the kidnapping statute to these facts. As such, defendant's plea counsel did not err by allowing him to plead guilty to first-degree kidnapping. Defendant also was facing an aggregate sentence exposure of sixty-six years on all of the charges. He has not contended he was prejudiced by the guilty plea in light of these other charges.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0847-15T2